IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA C. DRINKALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 21-284E |
| vs. | ) |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | |

ORDER

AND NOW, this 3rd day of November 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on February 16, 2022,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8) filed in the above-captioned matter on January 6, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is granted insofar as she seeks remand for further administrative proceedings and denied in all other respects. Accordingly, this matter is hereby remanded pursuant to sentence four of 42 U.S.C. § 405(g).

I. Background

Plaintiff applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.*, on November 22, 2014. (R. 2281). Therein she alleged onset of disability as of March 11, 2012. (*Id.*). After being denied as an initial matter, Plaintiff sought a hearing and was heard by an Administrative Law Judge ("ALJ"), but she

---

[1]  Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d). This substitution has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect the substitution.

received an unfavorable decision. (*Id.*). The Appeals Council denied review, and Plaintiff sought review before the United States District Court for the Western District of Pennsylvania ("the Court"). (*Id.*). The Court found that the ALJ's decision lacked adequate consideration of Plaintiff's 2015 disability rating from the Department of Veterans Affairs ("VA") and remanded the matter for further proceedings. *Drinkall v. Berryhill*, No. CV 18-67, 2019 WL 1115873 (W.D. Pa. Mar. 11, 2019).

The Court's remand order resulted in Plaintiff's receipt of a new hearing before a different ALJ who, as an initial matter, refused to reopen Plaintiff's prior Title II claims from November 2013 and May 2014. (R. 2282).[2] After establishing that the relevant period for Plaintiff's DIB application started August 1, 2014 and ran through December 31, 2019, the ALJ found Plaintiff was not disabled under the Act during the relevant time. (R. 2282, 2293). The Appeals Council refused to assume jurisdiction of the matter (R. 2271), making the ALJ's decision the Social Security Administration's ("SSA") final decision. 20 C.F.R. § 404.984(a). Plaintiff has argued that this most recent denial of her DIB application is unsupported by substantial evidence. She seeks reversal for an award of benefits or remand for further administrative proceedings.

**II.    Standard of Review**

The Court reviews an ALJ's disability determination for substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152—54 (2019). The threshold for substantial evidence is "not high." *Id.* at 1154. It requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). While the standard is deferential,

---

[2]    Plaintiff had alleged disability beginning March 11, 2012, which the ALJ interpreted as "an implied request to reopen her prior Title II claims." (*Id.*).

2

an ALJ's decision ought to be "as comprehensive and analytical as feasible . . . so that a reviewing court may know the basis for the decision." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citation omitted). That is, an ALJ "must provide at least a glimpse into his [or her] reasoning" and thereby "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citations omitted).

To determine disability under the Act, ALJs use a five-step evaluation. 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Pursuant thereto, an ALJ considers "whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009) (citations omitted); 20 C.F.R. § 404.1520(a)(4)(i)—(v). If a claimant's residual functional capacity ("RFC") does not permit his or her return to past work and, further, the claimant's RFC and vocational factors do not permit adjustment to other appropriate work, then the claimant will be found to be disabled under the Act. *Plummer*, 186 F.3d at 428 (citations omitted).

### III.     The ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2019. (R. 2284). She further found that Plaintiff had not engaged in substantial gainful activity ("SGA") from August 1, 2014 through the date she was last insured, though she did have one unsuccessful work attempt from August to November 2014 as a human resource assistant. (*Id.*). Next, the ALJ found Plaintiff had eleven severe, medically determinable impairments: "fibromyalgia, migraine headaches, obstructive sleep apnea, degenerative and discogenic disorders of the lumbar spine, cervical strain, degenerative joint

disease of the bilateral knees, irritable bowel syndrome, obesity, depression, anxiety, and post-traumatic stress disorder." (*Id.*). None of these impairments, nor any combination of them, were found to meet or equal the criteria for one of the presumptively disabling impairments listed in the regulations at 20 CFR Part 404, Subpart P, Appendix 1. (R. 2285).

Having thus resolved steps one and two—but not step three—in Plaintiff's favor, the ALJ set out to formulate Plaintiff's RFC in preparation for the inquiries at steps four and five. To determine the appropriate limitations for Plaintiff's RFC, the ALJ considered Plaintiff's testimony about her symptoms/limitations and her objective medical records, as well as Plaintiff's daily activities and the medical opinions in evidence. (R. 2287—91). Having considered this evidence, the ALJ formulated an RFC that included a reduced range of light-work with limitations to: standing/walking just four hours daily; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping, crouching, kneeling, and crawling; no more than occasional exposure to extreme heat, extreme cold, wetness, humidity, and pulmonary irritants; no exposure to workplace hazards (*e.g.*, unprotected heights and moving mechanical machinery); simple, routine, repetitive tasks involving simple work-related decisions; only occasional interactions with supervisors, coworkers, and the public without tandem tasks; and only few changes to work processes and setting. (R. 2287—88).

The ALJ found that this RFC was incompatible with Plaintiff's past work as a general office clerk or payroll clerk; however, Plaintiff's RFC, age, education, and work experience would permit adjustment to other work as a collator, photocopy machine operator, or non-postal mail sorter. (R. 2291—92). The vocational expert ("VE") testified that these occupations

corresponded to approximately 88,000 jobs in the national economy. (R. 2292). Based on that testimony, the ALJ found Plaintiff to be not disabled. (R. 2293).

### IV.     Legal Analysis

Plaintiff has raised at least four arguments challenging the ALJ's final decision. First, Plaintiff has argued that, despite the Court's remand order, the ALJ again failed to support the weight she afforded Plaintiff's VA disability rating. Second, Plaintiff has argued that the ALJ afforded Plaintiff's representation of her symptoms/limitations inadequate weight where medical records corroborated her allegations and where her military service record and work history bolstered her testimony. Third, Plaintiff has argued that the ALJ's RFC determination lacked adequate functional limitations to accommodate her impairments and limitations, *e.g.*, that the RFC lacked appropriate off-task time considering Plaintiff's irritable bowel syndrome ("IBS") symptoms and attention limitations. Fourth and finally, Plaintiff has argued that the ALJ failed to consider Plaintiff's VA medical records and erred in her evaluation of medical opinion evidence. These arguments overlap in significant respects. Considering all of Plaintiff's arguments together, the Court has determined that the ALJ's findings are not clearly supported by her references to the record. There are holes in the logical bridge the ALJ built between the evidence and findings that appear to be filled with unfounded assumptions about the nature of Plaintiff's daily activities. For that reason, the Court will order remand.

Reviewing courts are bound to evaluate an ALJ's decision upon those "grounds . . . upon which the record discloses that its action was based," *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943)), which is why it is critical that an ALJ's explanation as to how the evidence led to his or her findings is clear. *Cotter*, 642 F.2d at 704—05 (explaining the reasons why "an administrative decision should be

accompanied by a clear and satisfactory explication of the basis on which it rests"). Because claimants often have substantial medical records that could be found to support differing conclusions about their alleged disability, it often becomes necessary for an ALJ to explain why he or she rejected certain evidence in favor of other evidence. How an ALJ resolves conflicts of evidence is not to be displaced by what a reviewing court might perceive to be a better resolution. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."); *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."). However, reviewing courts are tasked to ensure that an ALJ's explanation for his or her decision is not undermined by the ALJ's rejection of evidence for no reason or for an objectively "wrong reason." *Cotter*, 642 F.2d at 706—07.

In this case, the ALJ premised her rejection of certain evidence upon purported inconsistencies in evidence. When she considered Plaintiff's allegations of significant mental limitations at step three—which factored into her determination of Plaintiff's RFC later in the analysis—the ALJ noted that Plaintiff "was responsible for attending to the needs of her children throughout the daytime" and that Plaintiff's children were thirteen and seventeen at the time she filed her application. (R. 2287). The ALJ rejected Plaintiff's claim that she did not socialize based on, *inter alia*, evidence that Plaintiff "[ate] out regularly." (R. 2286). The ALJ further found evidence of Plaintiff's dining out conflicted, to a degree, with her testimony about fibromyalgia pain. (R. 2289). She found Plaintiff's testimony that her migraines were not controlled with medication was undermined by medical records showing her headaches were

controlled with pharmacotherapy. (*Id.*). She also found Plaintiff's alleged physical limitations were undermined by evidence that Plaintiff could ride on her husband's motorcycle for up to thirty minutes. (*Id.*). The ALJ further found that Plaintiff's testimony about having up to eight bowel movements daily—each requiring half an hour in the bathroom—was contradicted by the frequency at which Plaintiff indicated she left her home to, among other things, take her children to pick up dinners. (R. 2290). When the ALJ subsequently considered Plaintiff's VA disability rating, she afforded it "little weight" because of "inconsistencies of record relating [to] the claimant's alleged limitations" in the rest of her decision. (R. 2291).

The Court finds that some of these purported "inconsistencies" (*id.*) are based on "presume[ed] facts that are not substantiated by the record." *Berry v. Sullivan*, 738 F. Supp. 942, 946 (W.D. Pa. 1990) (rejecting the conclusion that a claimant's work as a foster parent was substantial because that conclusion was based on unsupported inferences about the claimant's responsibilities as a foster parent). For instance, the ALJ in this matter appeared to assume that Plaintiff's care for her teenaged children reflected, to some degree, work-related abilities. (R. 2287).[3] However, the record does not support the ALJ's characterization of this evidence. Plaintiff testified that her children often helped her with domestic tasks that she was unable to do herself, *e.g.*, that her children would carry laundry baskets up the stairs for her because she could not carry them herself. (R. 2325). She also testified that her children helped with the housework (R. 2326) and that she felt like she had "been a bad mother." (R. 2321).

Similarly, the ALJ appeared to reject Plaintiff's testimony about the severity of her IBS because she found it inconceivable that Plaintiff was spending "up to four hours in the

---

[3] Plaintiff's children were 13 and 17 at the time she applied for benefits (R. 2287) and 18 and 22 at the time of her most recent hearing before an ALJ. (R. 2321).

7

bathroom" when she could "leave her home frequently." (R. 2289—90). However, the inference here—that Plaintiff left her home so frequently that time would not permit six-to-eight trips to the bathroom lasting approximately half an hour each—is pure speculation. Plaintiff's testimony about going out to eat is not facially inconsistent with spending a significant amount of time in the bathroom daily. Plaintiff testified that she often could not grocery shop long enough to get everything she needed, so her family would frequently "go out to eat." (R. 2326). When asked to explain what she meant by "go[ing] out to eat," Plaintiff explained that "[a] lot of the times what I do is, my son and my daughter drive, so I just have like a little thing of cash on our shelf, and I just hand them cash and have them go pick up dinner and bring it home." (*Id.*). This being Plaintiff's testimony about her activities, the Court cannot affirm the ALJ's speculative finding of inconsistency. Further, to the extent the ALJ may have found Plaintiff's brief motorcycle rides with her husband were also inconsistent with the time she alleged being home due to her IBS symptoms, such brief trips are also not obviously inconsistent with Plaintiff's testimony about her IBS symptoms.[4]

The ALJ's findings of inconsistency in these areas requires remand because it is evident that her findings rested on unfounded assumptions about the nature of Plaintiff's activities. The

---

[4] The Court does not fault the ALJ for finding that these 30-minute motorcycle rides conflicted with "the alleged debilitating nature of [Plaintiff's] musculoskeletal pain." (R. 2289). Plaintiff testified that she could sit for just ten to fifteen minutes before experiencing pain in her lower back. (R. 2327). Accordingly, it was reasonable for the ALJ to find that Plaintiff's motorcycle testimony was inconsistent with the alleged severity of her lower back pain. Regarding Plaintiff's musculoskeletal pain, Plaintiff has also challenged the ALJ's emphasis on the absence of any recommendation for surgery from Plaintiff's records. But treatment is relevant to an ALJ's evaluation of pain. *See* 20 C.F.R. § 404.1529(c)(3)(v) (identifying treatment as a factor relevant to evaluation of a claimant's symptoms such as pain). Therefore, the Court will not fault the ALJ for considering Plaintiff's treatment—or lack of aggressive/surgical treatment—in her evaluation of Plaintiff's musculoskeletal pain.

Court does not seek to evaluate the evidence itself, of course, nor does the Court suggest that the evidence supports Plaintiff's alleged symptoms and limitations. The Court here merely finds that because the ALJ based her decision on presumed, unsubstantiated facts, the decision cannot be found to be supported by substantial evidence.[5]

The Court also finds Plaintiff's argument concerning the ALJ's consideration of medical opinion evidence to be somewhat persuasive. Plaintiff has briefly argued that the ALJ failed to adequately explain why she afforded Dr. Shelley Ross's opinions "significant weight." (R. 2291). The ALJ afforded this 2015 opinion "significant weight[] because it [was] supported by and consistent with the totality of the evidence." (R. 2291). Without more, the ALJ's evaluation of this medical opinion is conclusory. It is also unclear why the ALJ found certain opinions were not entitled to much weight because significant evidence had been received since the time they were rendered, but made no mention of the same characteristic of Dr. Ross's opinion. (*Id.*).

---

5     To the extent that Plaintiff more generally alleged that the ALJ misgauged the severity of her pain by dismissing its full alleged extent despite Plaintiff's complaints of pain over time, the Court finds that more general request is merely a request to reweigh the evidence. Plaintiff has not alleged that the ALJ overlooked evidence of her pain from "sacroiliitis, sciatica, degenerative joint disease of the lumbar spine, cervical spine pain, and migraine headaches." (Doc. No. 9, pg. 10). She merely argues she was "treated consistently" for that pain and that her "pain complaints [were] consistent over time;" therefore, the ALJ should not have set aside her alleged limitations on account of her daily activities. (Doc. No. 9, pgs. 10—11). Any argument concerning the limiting effect of Plaintiff's pain may be addressed on remand, but the ALJ's discussion of the objective medical evidence relating to Plaintiff's pain did not contribute to the Court's decision to remand the matter. The same is true of Plaintiff's general argument that her mental impairments were severe enough to interfere with her ability "to function in any job on a sustained and full-time basis." (Doc. No. 9, pg. 14).

    The Court is also unmoved by Plaintiff's mention of her "excellent military service record and work record" insofar as Plaintiff has suggested that this history should have "entitled [her] to more credence." (Doc. No. 9, pgs. 11—12). The Court has often explained that though a claimant's work history is relevant, "an ALJ does not err by failing to afford a claimant heightened credibility based *solely* on her work history." *Chute v. Kijakazi*, No. CV 21-877, 2022 WL 4338433, at *1 n.1 (W.D. Pa. Sept. 19, 2022) (citing *Corley v. Barnhart*, 102 Fed. Appx. 752, 755 (3d Cir. 2004)).

Accordingly, in evaluating the medical opinion evidence on remand, further explanation for the various weights afforded medical opinions is necessary.[6]

## V. Conclusion

Based on the foregoing, the Court will order remand for further administrative proceedings. The Court will not go so far as to reverse the ALJ's decision and order an award of benefits. Such relief is appropriate "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 366 n.16 (E.D. Pa. 2018) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)). The courts also consider whether a claimant's "disability determination process has been delayed due to factors beyond [his/her] control." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008). The record in this case does not lend itself to reversal for an award of benefits, nor has Plaintiff suffered an egregious delay. Accordingly, the Court hereby remands this matter for proceedings consistent with the Order.

s/ Alan N. Bloch<br>
United States District Judge

---

[6] Plaintiff's remaining argument—that the ALJ overlooked her VA medical records—is without merit. Explaining her argument, Plaintiff has alleged that "the ALJ erred in failing to state the weight she gave, or did not give, the voluminous VA records in this case," and instead only assigned weight to the VA's disability rating. (Doc. No. 9, pg. 15). In response, Defendant has argued that the ALJ's decision plainly shows that she considered Plaintiff's VA records, and Defendant has further argued—correctly—that weight is assigned to medical opinion evidence, not objective medical evidence. (Doc. No. 11, pgs. 16—18). The Court agrees: the ALJ's decision shows that she considered Plaintiff's VA records in her assessment of Plaintiff's headaches (R. 2289 (citing Ex. 28F, 2016 VA Progress Notes)), degenerative changes of the knee and spine (*id.* (citing Ex. 11F 2015, MRI results from the Erie VA Medical Center)), fibromyalgia (*id.* (citing Ex. 11F, 2015 Health Summaries from the Erie VA Medical Center)), and mental impairments. (R. 2290 (citing Ex. 19F, 2015 Treatment Records from the Erie Veterans Center)). The ALJ was required to consider all this relevant evidence toward the RFC, 20 C.F.R. § 404.1545(a)(1), but she was not required to articulate its specific weight in her analysis.

ecf:    Counsel of Record